Harold Lee MORRIS *v.* John GARMON

84-267                                              686 S.W.2d 396

Supreme Court of Arkansas
Opinion delivered March 18, 1985
[Rehearing denied April 22, 1985.]

*Martin, Vater & Karr,* by: *Charles Karr,* for appellant.

*Bethell, Callaway, Robertson & Beasley,* by: *Edgar E. Bethell,* for appellee.

STEELE HAYS, Justice. By this appeal we are asked to reverse a probate court finding that Mrs. Alren Morrison was domiciled in Ft. Smith, Arkansas when she executed a will in November, 1979, and when she died in August, 1983. This dispute over a part of her estate is between her brother, the devisee under her will, and her son-in-law and two granddaughters, the appellees.

Mrs. Morrison and her husband had lived in Ft. Smith for many years. After Mr. Morrison's death in 1975 she continued to live in the home until 1979, when she fell and broke her hip. When she was ready to leave the hospital her adopted daughter, Andrea Garmon, arranged for her to be moved to a Norman, Oklahoma, nursing home, near where Mrs. Garmon lived.

In September of that year, Mrs. Garmon died from a recurrence of hepatitis. Some days later, Mrs. Morrison executed a will leaving her estate to John Garmon, expressing confidence that he would care for her two minor granddaughters, Kristin Garmon and Katherine Garmon. John Garmon and his daughters are the appellees. On Mr. Garmon's petition, Mrs. Morrison's assets were placed in a conservatorship. In October, 1979, Mrs. Morrison's brother, appellant Harold Morris, moved Mrs. Morrison to a nursing home in Ft. Worth.

In November of 1979, shortly after arriving in Ft. Worth, Mrs. Morrison executed a new will leaving everything to Harold Morris, or if he failed to survive her, to another brother, and if he failed to survive, to a niece. In August, 1983, Mrs. Morrison died in Ft. Worth.

Harold Morris offered the will for probate in Tarrant County, Texas, and letters testamentary were issued. He then obtained an order in Oklahoma, directing the con-

servator to deliver the Oklahoma assets to him as executor.

In January, 1984, John Garmon petitioned the Sebastian Probate Court for letters of administration on the grounds that Mrs. Morrison was domiciled in Ft. Smith when she died and that her two granddaughters were pretermitted heirs under the Texas will. Harold Morris responded, alleging that Mrs. Morrison was a domiciliary of Ft. Worth. The probate judge found Mrs. Morrison to have been domiciled in Ft. Smith when she executed the second will and when she died, that the will should be construed according to Arkansas law, under which Mrs. Morrison's granddaughters were undisputably pretermitted heirs. The order directed Mr. Morris to deliver to the administrator the assets he was holding as executor.

Two points are presented on appeal: The Sebastian Probate Court erred in failing to give full faith and credit to the order of the Tarrant County Probate Court, admitting the will to probate in Texas, and the finding that Mrs. Morrison was domiciled in Ft. Smith is clearly erroneous.

The appellees maintain the full faith and credit argument was not presented to the probate judge, and the record bears out this contention. We find no mention of the argument in the proceeding below. The appellant introduced the will, the order of probate and other filings from the Texas and Oklahoma proceedings, but those documents were offered on the issue of domicile and do not impliedly express a full faith and credit argument not otherwise stated. Moreover, at the outset of the hearing below both sides informed the probate judge that the disputed issue was whether Mrs. Morrison was domiciled in Arkansas or in Texas when her will was made and when she died. We conclude the constitutional argument was not presented to the trial court and, hence, cannot be raised on appeal. *Gay* v. *Rabon,* 280 Ark. 5, 652 S.W.2d 836 (1983).

Appellant argues the issue of domicile is res judicata as that question was decided between these parties in connection with the Oklahoma proceedings. As with the full faith and credit issue, the point was not presented nor ruled on below.

Appellant's argument fails in any case. The Arkansas court could properly address the issue of domicile, as such a finding by a foreign court in a probate proceeding goes to jurisdiction and can be considered collaterally by a second state without a violation of the full faith and credit clause. See Leflar, American Conflicts Law, pp. 411-412; Wills, 80 Am. Jur.2d § 1056, p. 185; *Matter of Will of Lamb*, 30 N.C. 452, 279 S.E.2d 781 (1981); *Burbank* v. *Ernst*, 232 U.S. 162 (1914); *Re: Clark's Estate*, 148 Cal. 108, 82 P. 760 (1905); *Smith* v. *Normart*, 75 P.2d 38 (Ariz. 1983); *Scripps* v. *Durfee*, 131 Mich. 265, 90 N.W. 1061 (1902). And see *Phillips* v. *Sherrod Estate*, 248 Ark. 605, 453 S.W.2d 60 (1970).

With respect to the second point, we cannot say the finding as to domicile was clearly erroneous. "To effect a change of residence or domicile, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence in another place or jurisdiction, with the intention of making the last-acquired residence a permanent home." *Phillips* v. *Sherrod Estate, supra; Oakes* v. *Oakes*, 219 Ark. 363, 252 S.W.2d 128 (1951). The intent to abandon one's domicile and take up another must be ascertained from all the facts and circumstances in any particular case. *Oakes* v. *Oakes, supra.*

Here, the decedent was a long time resident of Ft. Smith. After her fall there was no one to care for her in her home so she was moved to nursing homes, first to Oklahoma, then to Texas. While in the Ft. Worth nursing home, she fell again, prolonging her convalescence in Ft. Worth.

After Mrs. Morrison was moved to Oklahoma, and thereafter in the Texas nursing home, her home in Ft. Smith was kept in a state of readiness for her return. None of the furniture was removed, utilities were kept on, her car was parked in the carport and the yard was regularly maintained, all with her knowledge and approval. She maintained her membership in the First United Methodist Church of Ft. Smith and on numerous occasions expressed to her grandchildren and to neighbors a steadfast hope of returning to her home in Ft. Smith — to be with friends, and to engage in

normal activities. Although there was evidence of a contrary intent, we cannot say the finding of the probate judge was clearly erroneous. ARCP 52(a).

Our holding in *Oakes* v. *Oakes, supra,* is instructive. Mrs. Oakes, an Arkansas domiciliary, developed tuberculosis and entered a sanitarium in New Mexico in 1947. She took only her clothing, leaving her furniture and household goods in her home in Arkansas. Her two children went to live with grandparents in Texas. She returned to Arkansas three years later to testify in the divorce case she had filed against her husband. She told the court she planned to return to the sanitarium for an indefinite duration. We found no evidence that Mrs. Oakes had acquired a new domicile and added: "A change of residence for the purpose of benefiting one's health does not usually effect a change of domicile. Such a change is looked upon as temporary merely, even though the actual time spent in the new residence may be long."

Affirmed.